NOTICE
Decision filed 07/27/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 250778-U

NO. 5-25-0778

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 24-CM-260001 |
| | ) | |
| DIAMOND MORRIS, | ) | Honorable |
| | ) | L. Dominic Kujawa Jr., |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE BARBERIS delivered the judgment of the court.
Justices Vaughan and Clarke concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the circuit court's finding of guilt and sentence where sufficient evidence existed for a rational trier of fact to find defendant guilty of criminal damage to property.

¶ 2    Following an April 16, 2025, bench trial in the circuit court of St. Clair County, defendant, Diamond Morris, was found guilty of misdemeanor criminal damage to property. The court sentenced defendant to one year of court supervision and ordered her to pay a $514 fine. Defendant appeals the finding of guilt and sentence, arguing that insufficient evidence existed to prove her guilty beyond a reasonable doubt. We affirm.

1

¶ 3                           I. BACKGROUND

¶ 4      On December 4, 2024, the State charged defendant with criminal damage to property, a
Class A misdemeanor. 720 ILCS 5/21-1(a)(1) (West 2022). At her April 16, 2025, bench trial,
defendant elected to proceed *pro se*.

¶ 5      The State called Tyler Brooks, an officer with the Belleville Police Department, to testify.
Officer Brooks testified that on August 6, 2024, he responded to a call for criminal damage to
property. Upon arrival, Officer Brooks made contact with Ja Lisa Mosley. Mosley stated that
there were scratch marks on her car and she suspected defendant caused the damage. Officer
Brooks "observed scratch marks that [were] consistent with someone dragging something along
the surface of the vehicle." He took photographs of the scratch marks and "placed [defendant] in
the system as wanted for investigation." Officer Brooks testified that he never made contact with
defendant, but he knew her name was Diamond Morris.

¶ 6      The State then called Deondre Brooks, an officer with the Belleville Police Department.
On December 4, 2024, Officer D. Brooks[1] made contact with defendant and executed the arrest
warrant. Officer D. Brooks issued a citation to defendant for criminal damage to property.

¶ 7      The State next called Ja Lisa Mosley. Mosley testified that she knew defendant because
their children share the same father. Mosley and defendant do not get along and had exchanged
disagreements and threats in the past. In August 2024 Mosley and her child were at the house of
the child's paternal grandmother visiting. She drove to the house in her personal vehicle, a
Hyundai Tucson. She estimated that she stayed there for "about an hour, hour and a half." While
in the living room talking to the grandmother, defendant arrived and began speaking with the

---

[1]We refer to Officer Deondre Brooks as "Officer D. Brooks" to differentiate from Officer Tyler
Brooks. We do not intend any informality or disrespect.

2

grandmother. Mosley stayed in the living room to watch television and supervise the children playing. She stated, "There were people coming in and out of the house ***." Defendant left and, through a living room window, Mosley observed defendant "walk *** around" and "look[ ] into" Mosley's car for three to four minutes. Mosley testified, "[Defendant] was in the back of my back right side for a minute and then she walked around and entered into her car and I seen [*sic*] the key in her hand."

¶ 8 Approximately 10 minutes after defendant's departure, Mosley and the grandmother went outside to look at Mosley's new car. That is when Mosley noticed scratches "from the passenger door all the way back behind the passenger back seat door back behind the license plates." Mosley testified that the scratches were not there prior to driving to the grandmother's residence. Mosley affirmed that she did not see anyone except defendant walking around her vehicle at the residence. She did not call police immediately because the grandmother did not want the police at her residence. The grandmother ordered Mosley a car scratch repair kit from Amazon. Mosley left the grandmother's residence and then called the police.

¶ 9 Defendant, acting *pro se*, called Kyle Hosein as a witness. Hosein testified that he and defendant left the residence at the same time. He testified that he never saw defendant scratch Mosley's vehicle but acknowledged he "didn't pay attention to [Mosley's] vehicle."

¶ 10 Defendant then testified. Her daughter's grandmother watched her daughter because she was taking a phlebotomy class. When defendant arrived at the residence, she saw several cars outside. Upon entering, she saw Mosley, but the two did not speak to each other. She testified that she left with her daughter and Hosein left at the same time. She testified that she did not walk around Mosley's car and did not observe any scratches.

3

¶ 11    The State recalled Mosley to testify in rebuttal. She testified that she did not see Hosein leave with defendant. She only saw him inside the residence but acknowledged that people were coming in and out throughout the day, including Hosein's twin, so he may have been outside at some point. When asked if she "definitely" remembered seeing defendant walking around her car, Mosley answered in the affirmative.

¶ 12    In closing, the State argued that the testimony adduced revealed a disgruntled relationship between defendant and Mosley. When Mosley arrived at the grandmother's house, her car did not have scratches, but then "miraculously once the defendant stepped outside, inspected the car and did circles around the car did those key marks appear on *** Mosley's vehicle." The State argued that Mosley's testimony contradicts defendant's contention that Hosein was outside with her.

¶ 13    The trial court then proceeded to its judgment. The court recounted that Mosley saw defendant leave. Through the living room window, Mosley observed defendant walking around her car. She saw a key in defendant's hand. The scratch marks on Mosley's car were not there when she arrived. About ten minutes after defendant's departure, Mosley and the grandmother saw scratches on the car.

¶ 14    The trial court characterized Hosein's testimony as "confusing" but ultimately Hosein's "testimony is that they left at the same time and [defendant] did not key the car of *** Mosley." The court summarized defendant's testimony as "[e]ssentially I didn't do it." The court further concluded that the officers' testimony "really didn't offer me too much. They were just there to take the report and eventually serve the complaint upon [defendant]." The court concluded that the case boiled down to "the believability of the witnesses."

¶ 15    The trial court found defendant guilty, sentenced her to one year of court supervision, imposed a fine of $514, and reserved the issue of restitution. Defendant appealed the finding of guilt and sentence of court supervision and $514 fine.

¶ 16                                  II. ANALYSIS

¶ 17    On appeal, defendant argues that the circumstantial evidence failed to prove her guilty beyond a reasonable doubt. The State rebuts that sufficient evidence existed for a rational trier of fact to find defendant guilty beyond a reasonable doubt.

¶ 18    When considering a challenge to the sufficiency of the evidence, a reviewing court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *People v. Collins*, 106 Ill. 2d 237, 261 (1985). It is not the function of the reviewing court to retry a defendant. *Id*. As such, a reviewing court "will not substitute its judgment for that of the trier of fact on issues involving the weight of the evidence or the credibility of witnesses." *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224-25 (2009) (citing *People v. Cooper*, 194 Ill. 2d 419, 431 (2000)). This standard applies regardless of whether a defendant received a bench or jury trial. *Id.* at 225 (citing *Cooper*, 194 Ill. 2d at 431).

¶ 19    The testimony of a single witness, if it is positive and the witness credible, is sufficient to convict, even if contradicted by the defendant. *Id*. at 228; *People v. Smith*, 185 Ill. 2d 532, 541 (1999). In a bench trial, it is for the judge, as the trier of fact, to determine the credibility of the witnesses, to weigh the evidence, to draw reasonable inferences from the evidence, and to resolve any conflicts in the evidence. *Siguenza-Brito*, 235 Ill. 2d at 233. While the credibility of a witness is within the province of the trier of fact, and the finding of the trier of fact on such matters is entitled to great weight, the determination is not conclusive. *Smith*, 185 Ill. 2d at 541. "Rather,

5

we will reverse a conviction where the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of defendant's guilt." *Id.* If a finding of guilt hinges on eyewitness testimony, a reviewing court must decide whether, in light of the record, a rational trier of fact could reasonably accept the testimony as true beyond a reasonable doubt. *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004). The trier of fact's decision to accept testimony is entitled to great deference because the fact finder saw and heard the witness. *Id.* However, its decision is not conclusive or binding on the reviewing court. *Id.* Testimony may be found insufficient "only where the record evidence compels the conclusion that no reasonable person could accept it beyond a reasonable doubt." *Id.* Even so, a reviewing court must allow all reasonable inferences from the record in favor of the State. *Id.*

¶ 20    Here, the trial court acknowledged that the case hinged upon "the believability of the witnesses." The court recounted that Mosley testified that there were no scratch marks on her car when she arrived at the grandmother's residence. Mosley saw defendant leave. Through the living room window, Mosley observed defendant walking around her car. She saw a key in defendant's hand. About 10 minutes after defendant's departure, Mosley and the grandmother discovered scratches on the car.

¶ 21    The trial court characterized Hosein's testimony as "confusing" but that, ultimately, Hosein's "testimony is that they left at the same time and [defendant] did not key the car of [ ] Mosley." The court summarized defendant's testimony as "[e]ssentially I didn't do it." The court further concluded that the officers' testimony "really didn't offer me too much. They were just there to take the report and eventually serve the complaint upon [defendant]."

¶ 22    In finding defendant guilty, the court expressly stated, "I believe *** Mosley more than I believe [defendant]." It is well settled that credibility determinations of witnesses are within the

6

province of the trier of fact and given great weight. *Collins*, 106 Ill. 2d at 261. While defendant is correct that no one directly witnessed her scratching the car, we do not find the trial court's examination of the circumstantial testimonial evidence—or inferences drawn therefrom—to be "so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of defendant's guilt." *Smith*, 185 Ill. 2d at 541. Circumstantial evidence can be sufficient to sustain a criminal conviction if the trier of fact is satisfied, not necessarily as to "each link in the chain of circumstances," but rather where "all of the evidence taken together satisfies the trier of fact beyond a reasonable doubt." *People v. Hall*, 194 Ill. 2d 305, 330 (2000). The trial court made the reasonable inference of defendant's guilt from Mosley's testimony that she arrived at the grandmother's house with an unscratched car, saw defendant walk around her vehicle for 3 to 4 minutes with keys in her hand, and then discovered scratches on her car 10 minutes later. The trial court heard opposing testimony from defendant and Hosein but did not find their testimonies believable. We decline to retry defendant by weighing the witness testimony differently. *Collins*, 106 Ill. 2d at 261.

¶ 23     We do not find defendant's analogizing of *People v. Gugliotta*, 81 Ill. App. 3d 362 (1980), persuasive. In that case, the defendant was ejected from a party and about 10 to 15 minutes later a fire started at the apartment building. *Id.* at 363-64. Another fire was reported two blocks from the apartment building at a location next door to the house where the defendant lived. *Id.* at 364. While awaiting trial, the defendant was spotted around the area of two more fires. *Id.* at 364-65. The appellate court found that the defendant's "mere presence" at or around the scene of a crime was not sufficient to establish guilt. *Id.* at 365.

¶ 24     Here, defendant alleges the circumstances are similar—no one directly saw defendant scratch Mosley's car and "there were many possibilities as to when and how the scratches could

7

have occurred." We disagree with defendant that the State's case was "based on mere speculation." Defendant's guilt is not predicated upon mere presence. Instead, the trial court believed Mosley's testimony that, amid an acrimonious relationship with defendant, Mosley observed defendant linger around her car for several minutes with keys in her hand. Scratches that were not there upon Mosley's arrival at the grandmother's residence, now appeared about 10 minutes after defendant left. This evidence is more than "mere presence" and thus dissimilar to *Gugliotta*. As such, viewing the evidence in the light most favorable to the State, the trial court as a rational trier of fact, reasonably concluded that defendant damaged Mosley's car beyond a reasonable doubt.

¶ 25                                    III. CONCLUSION

¶ 26     For the foregoing reasons, we affirm the judgment of the circuit court of St. Clair County.


¶ 27     Affirmed.